# WILLIAM ALBERT THOMAS *v.* STATE OF MARYLAND

[No. 123, October Term, 1945.]

*Decided May 15, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*John Palmer Smith,* with whom was *Richard T. Earle* on the brief, for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *William Curran, Attorney General,* and *Harry C. Butler, State's Attorney for Queen Anne's County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

On November 15, 1945, William Albert Thomas was found guilty of murder in the second degree by the Circuit Court for Queen Anne's County, sitting as a jury, and was sentenced to the Maryland Penitentiary for the period of 18 years. He is appealing from the judgment of conviction.

On July 16, 1945, shortly after 6 P. M., James Furbush, an elderly man who lived alone at Price, was found in the living room of his home with his face covered with blood and a fracture of his skull, indicating that he had been brutally assaulted by a club. On July 20 he died in a hospital as a result of the fracture; and Wilbert Melvin, a farmer, aged 39, of Kent County, and his wife, Nellie Melvin, were arrested and taken to jail in Centerville, on the charge of murder. On July 21 each of the prisoners signed a statement regarding the assault, and several days later they were held for the action of the grand jury. In September, however, Thomas was arrested in Salisbury on a warrant charging him with assault upon Furbush with intent to rob, and in November he was indicted for murder.

At the trial in the court below the State introduced in evidence a confession signed by the defendant in the presence of the sheriff and two State police officers; but the defendant, taking the stand in his own defense, swore that he was unable to read and that he thought the confession related to an assault upon another man, Hickey Cooper. Melvin, called as a witness for the defendant, testified that he went to Furbush's home on July 16, but left for Centerville to get some liquor, and when he returned he found that Furbush has been injured. He denied that he had quarreled with Furbush, and stated that he called to his wife, who was on the porch, to see how badly the man was hurt, but she would not come in. The Court did not allow Melvin to answer whether he had been arrested by Corporal Andrews of the State Police upon the death of Furbush, or whether he had signed a statement regarding the murder. When shown the statement purporting to have been signed by him on July 21 in the presence of Sheriff Perkins and two other officers, he acknowledged that the signature looked like his, but the Court refused to admit the statement in evidence.

Mrs. Melvin, also produced as a witness for the defendant, testified that she accompanied her husband to Furbush's home on the evening of July 16, but did not enter. The Court did not allow her to state whether she had been arrested by Corporal Andrews, or whether she had signed a statement regarding the murder of Furbush. She was shown a statement dated July 21 purporting to have been made by her regarding the assault upon Furbush, and when asked whether the signature on the statement was her signature, she replied: "Yes, sir, I guess it is." But the Court did not allow her to say whether she had signed the statement freely and voluntarily, or whether any offer or inducement had been made to her to sign it. The Court refused to admit the statement in evidence.

In England during the eighteenth century, when the rule against hearsay evolved, the courts formulated the

exception of declaration against one's own interest where the declarant has since died or otherwise become unavailable as a witness. This exception based upon the grounds (1) that the hearsay rule might exclude the only available evidence, and result in great injustice unless exception were made, and (2) that no person would be likely to make such a statement unless true, and hence the statement would be free enough from the risk of untrustworthiness to make the requirement of cross-examination a work of supererogation. In the nineteenth century, however, the House of Lords engrafted an important limitation upon the exception. In 1811 a witness in the Berkeley Peerage Case, 4 Campb. 401, was not allowed to testify to a declaration which had been made by a clergyman, since deceased, that he had performed the marriage of the late Earl and the Countess of Berkeley. Then in 1844 in the Sussex Peerage Case, 11 Clark & F. 85, 8 Eng. Reprint 1034, 1043, the son of a deceased clergyman was not allowed to testify that the father had stated that he had performed the marriage of the deceased Peer and his alleged wife. The question to which the declaration related rested partly on an Act of Parliament, which contained a penal clause, and it was surmised that the clergyman has committed an unlawful act in performing the marriage. The rule was then enunciated that an extrajudicial declaration, to be admissible as a declaration against interest must be against pecuniary or property interest; and a confession of guilt does not constitute a declaration against interest within the purview of the exception to the hearsay rule. In accordance with the English limitation, the courts in the United States have held almost universally that in a trial of a criminal case a confession by a third person out of court that he committed the crime charged against the defendant is inadmissible, unless it constitutes a part of the *res gestae*. *Munshower v. State*, 55 Md. 11, 39 Am. Rep. 414; *Baehr v. State*, 136 Md. 128, 110 A. 103; *State v. Totten*, 72 Vt. 73, 47 A. 105; *Commonwealth v. Densmore*, 12 Allen, Mass., 535; *Commonwealth v. Wakelin*, 230

Mass. 567, 120 N. E. 209, 213; *State v. Hack,* 118 Mo. 92, 23 S. W. 1089; *Tillman v. State,* 112 Ark. 236, 166 S. W. 582, 586; *People v. Raber,* 168 Cal. 316, 143 P. 317; *State v. Fletcher,* 24 Or. 295, 33 P. 575; 20 *Am. Jur., Evidence,* Sec. 495; 22 *C. J. S., Criminal Law,* Sec. 749.

This rule of evidence was criticized by Professor Wigmore as a "barbarous doctrine." He said it is absurd because the only reason ever advanced for it was the argument that introduction of oral extrajudicial confessions would open the door for fraud to exculpate the real criminal, but the same argument of danger of abuse might be made against the admission of testimony of any witness, and certainly a person would not be more likely to make a false statement against his own interest as to a crime punishable by imprisonment or death than as to a pecuniary obligation or a boundary line. He said it is unjust for a court in a criminal trial to reject "a confession, however well authenticated, of a person deceased or insane or fled from the jurisdiction (and therefore quite unavailable) who has avowed himself to be the true culprit," so that an innocent person accused of crime cannot vindicate himself "even by producing to the tribunal a perfectly authenticated written confession, made on the very gallows, by the true culprit beyond the reach of justice." 5 Wigmore on Evidence, 3d Ed., Secs. 1476, 1477.

The rule was considered by the United States Supreme Court in 1913 in *Donnelly v. United States,* 228 U. S. 243, 33 S. Ct. 449, 461, 57 L. Ed. 820, where the appellant was convicted of the murder of an Indian on a reservation in California. In view of the practically unanimous weight of authority in the state courts against admitting extrajudicial evidence of confessions of third parties, the Supreme Court held that the confession of a man, since deceased, that he had committed the murder with which the defendant was charged was inadmissible in evidence. Justice Holmes, in his landmark dissent, in which two other justices concurred, saw the injustice of the rule and refused to follow it. He took the position

that rules of evidence are based mainly upon experience, logic, and common sense, less hampered by history than same parts of the substantive law. He then stated his opinion that "no other statement is so much against interest as a confession of murder."

Ten years later the dissent of Justice Holmes was accepted as sound by the Supreme Court of Appeals of Virginia in *Hines v. Commonwealth*, 136 Va. 728, 117 S. E. 843, 35 A. L. R. 431. In that case the Court stated that a confession by an unavailable witness ought to be accepted in a criminal case just as an admission in a civil case, for the relevancy is as clear, the necessity as great, and the guaranty of truth as potent; but, in view of the overwhelming weight of authority to the contrary, the Court went no further than to hold that evidence of confession of guilt of a homicide by one possessing motive and opportunity to commit it is admissible upon trial of another for the crime. In 1926 the rule was assailed again in Maryland in *Brennan v. State*, 151 Md. 265, 134 A. 148, 48 A. L. R. 342, a bastardy case tried in the Criminal Court of Baltimore City, where the accused claimed that the actual father of the child had committed suicide and left a letter disclosing that he was responsible for the bastardy and had so acknowledged to his sister. The Court of Appeals recognized the general rule, but reversed the judgment of conviction by creating an exception to the rule when the case is an unusual one.

On this appeal we have no occasion to change any of the established rules of evidence. The case before us is not analogous to the cases cited by the State. In those cases the challenged declaration was treated as hearsay because it did not derive its value solely from the credits to be given to the witness himself, but rested in part on the competency and veracity of some other person. In the court below, on the contrary, the declarants themselves came to the witness stand. It is accepted that a confession is not conclusive, but can be disproved by other evidence. Moreover, where the confession of a defendant is admitted in evidence, as in the case at bar,

the jury should consider it in the light of all surrounding circumstances and in connection with all the other evidence in the case. *Gantling v. State,* 40 Fla. 237, 23 So. 857, 861; 2 *Wharton, Criminal Evidence,* 11th Ed., Secs. 643, 644. It has been said that nothing is so convincing as a confession which we believe to be true, and nothing so uncertain as the testimony offered to prove a confession. The truth of this is illustrated here by the police officer who succeeded in getting confessions from different persons for the same crime. Confessions, like dying declarations, are submitted under exceptions to the fundamental rules of evidence, and should be subjected to careful scrutiny and received with great caution. It has been held that a defendant charged with murder may introduce in evidence oral statements uttered by the victim at various times while languishing from the assault, from which he eventually died, to contradict a dying declaration introduced by the State, even though the statements were neither part of the *res gestae* nor dying declarations, because they tended to impeach the State's evidence. *Green v. State,* 154 Ind. 665, 57 N. E. 637. Likewise, we hold that where a witness has made a written confession that he committed the crime with which the defendant is charged, the defendant should be allowed to introduce the confession in evidence and question him in regard to the confession and the circumstances under which he made it. We further hold that where in a criminal case an officer has secured contradictory confessions from two different persons, the defense should be permitted to question him about both confessions and we further hold that such a confession by a third party is admissible unless it appears that there was some collusion in obtaining it.

As the rulings of the trial court were prejudicial error, the judgment of conviction must be reversed.

*Judgment reversed, and new trial awarded.*