THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
SECUNDINO SANTANA PAZ, known as CUNDI, Defendant
and Appellant.

No. 15613. Argued May 3, 1954.—Decided June 7, 1954.

*C. H. Juliá* and *Hipólito Marcano* for appellant. *José Trías
Monge, Attorney General,* and *Jaime García Blanco, Special
Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Secundino Santana Paz, known as Cundi, was prosecuted
in the former District Court of San Juan for the crime of
murder in the first degree, for having killed with a firearm,

deliberately and with malice aforethought, some time in July 1946, Juan Pérez Cosme, a human being. The jury did not agree upon a verdict at the first trial; however, at the second, the verdict of conviction was unanimous. A motion for new trial made by the defendant was overruled, whereupon he was sentenced to life imprisonment.

Among the thirteen assignments made on appeal by defendant, the third, fourth and fifth errors charge that the trial court erred (3) in not allowing witness Antonio Colón Sanz to testify before the jury as to facts witnessed by him at the scene of the crime; (4) nor as to who was the person who caused Pérez Cosme's death; and (5) in concluding that the former's testimony was inadmissible on the ground that an alibi was the defendant's theory, and that he had no right to offer evidence on what happened at the scene of the crime; and the sixth, in not allowing witness Angel Colón to testify on the occurrence, particularly since he was the person who fired and killed Juan Pérez Cosme. The Secretary of Justice, through a special prosecuting attorney, consents to reversal of the sentence on the ground that the above errors were committed.

The second trial of this case lasted over one week, and the transcript of the evidence sent up as part of the record is quite voluminous. We have read it with utmost care. Ramón Calo Feliciano, a newspaper boy 14 years of age, testified that in the evening of July 4, 1946 the deceased, who was in his bakery located at Providencia Street in Santurce, purchased a copy of the newspaper "El Imparcial", and that after selling another copy of the same paper across the street he saw Secundino Santana Paz firing at Pérez Cosme from the ditch which runs in front of the bakery, and also that the latter, together with other persons, pursued the aggressor down the street mentioned but were unable to capture him. Other witnesses for the People testified essentially as follows: *Lydia Pérez Rodríguez* is the decedent's daughter; she was in her house and, upon hearing the shots, she dashed out

towards her father's store; that she found him wounded, and he said to her that "Cundi, Etanislao Santana's son, had wounded him." *Santos Tite Reyes Ramos* talked with the defendant the day following the occurrence, and the latter disclaimed any participation in the attempt, stating that he had washed his hands with bay rum that night because he was ill with influenza. *María Cristina Soler* was the defendant's sweetheart; he accompanied her to Pérez Cosme's bakery, where they bought two loaves of bread, and put the money on the counter; on their way to the bakery Santana Paz showed her a firearm which he carried in his back pocket, and said "that he had been ordered to kill Juan Pérez Cosme"; she heard several shots shortly after returning home. *Aida Pérez de Rivera* is also Pérez Cosme's daughter; the bakers were then on strike; her father, owner of "El Nuevo Trato" bakery, baked and sold bread notwithstanding the bakers' strike, with the help of his children; the Sunday preceding the occurrence she saw Secundino Santana Paz standing in front of the bakery persistently looking inside the bakery. Dr. John Robert Bierly treated the deceased for the wounds received.

The theory of the defense, as already stated, was an alibi. The witnesses, who were numerous, testified that they saw the defendant working early on the day of the occurrence in a horse-racing game of chance located on Eduardo Conde Ave. in Santurce.[1] *Antonio Colón Sanz* testified, however, that he saw Juan Pérez Cosme on July 4, 1946, about 9:30 p. m.[2] The attorney for the defense asked him to explain where, when and how he had seen him, whereupon the prosecuting attorney moved that the jury be withdrawn. It was so granted. Thereupon the prosecuting attorney argued that since the case was on trial for the second time, he knew that the witness was going to testify that "he saw a person

---

[1] According to the evidence, it takes a person about ten minutes to walk from the booth of chances to Pérez Cosme's bakery.

[2] This is the day and hour Pérez Cosme was wounded.

other than the defendant fire at Juan Pérez Cosme. That evidence, your Honor, is altogether inadmissible." The attorney for the defense replied that that is more or less what the witness will testify, "except that the witness will testify that he arrived at the bakery just as Juan Pérez Cosme and another person were in the midst of an argument, that he saw that other person fire the shots and run away, and that then, together with other persons, he ran after him." The question was amply discussed and the prosecuting attorney's objection was sustained by the court which indicated that "the court believes that where an alibi is invoked as a defense, that is, that the accused person was not present at the scene of the crime, . . . that person is not concerned with anything that happened there. Therefore, any evidence tending to prove what happened at the scene of the crime is inadmissible . . . it is incumbent on him to prove what he announced in his defense, namely, that he was not there. That is why it is inadmissible where the defense of alibi is established." After reconsideration was denied, the defense took exception. The jury then returned to the courtroom and the witness testified in their presence that there were two persons in front of the bakery door, and that he was able to recognize them well. Upon being asked if anything happened between those two persons, the prosecuting attorney objected and the court sustained the objection. The witness further testified that neither of those two persons is present in the courtroom, and that he is absolutely sure of that; that after seeing those two persons he followed the crowd which accompanied Pérez Cosme; that the person he saw at the bakery had run away, and that that person did not look like the accused, "because the person I saw running as I stood in front of the bakery was a smaller type, stout, quite dark; that is why he did not resemble him. . . . Well, I walked behind the crowd and Juan Pérez until I reached the corner of Barbosa Street; from there on he gave up the pursuit of the presumptive aggressor, of the person who fired, and then turned back with

the crowd, and then the decedent's daughter arrived." When witness *Angel Colón* was called to the stand, The People knowing by reason of the previous trial what he was going to testify to, again moved that the jury be withdrawn. It was so ordered by the court. In the absence of the jury, the witness testified that he was a baker and therefore knew Pérez Cosme, whom he saw at his bakery on July 4, 1946, about 9:30 p. m.; that Pérez Cosme was alone and packing bread; that he talked to him, and that Pérez Cosme ordered him out and an argument ensued; that thereupon he rushed out and ran up the street, and upon reaching the corner he turned and jumped over a fence; that at that time he knew Secundino Santana Paz, and he did not see him at any time near the bakery from the time he arrived until he left running. The prosecuting attorney argued that the evidence was inadmissible, to which the judge replied "the court feels that if the witness were permitted to testify before the jury the way he did now, it would be better, to a certain extent, if he testified that he killed him for the jury would then believe or disbelieve him, whereas now he will create confusion in their minds. The prosecutor's objection is therefore sustained. The court rules that it is inadmissible for the reasons stated above, particularly since it was announced that the person involved would testify that he killed Juan Pérez Cosme. That evidence, according to the authorities of Puerto Rico and California, would be inadmissible." The defense moved for reconsideration of the court's ruling as well as, for the purpose of the record, to take down the witness' testimony in the absence of the jury. The judge thereupon ordered that a separate record be made of the witness' testimony. The pertinent part of the testimony which as we have already said is evidence offered but not admitted, is as follows:

"Q.—Will you please tell us what you talked about with Juan Pérez when you went in?

"A.—Well, I said to Don Juan, 'Don Juan, couldn't you stop the sale of bread for two or three weeks until the bakers' strike is over, so as to enable the heads of family to earn their living?' He there and then said to me, 'Get out of here,' and threw me out. I got out rapidly and jumped to the sidewalk, and while on the street he said to me, 'Get out of here quickly'. He then pulled out a revolver and I carried a pistol; he fired at me and I at him. I ran away, he then fired at me, I jumped the fence. . . ."

■ It is an almost universal doctrine that an extra-judicial confession of a stranger to the effect that he perpetrated the offense, is inadmissible in a criminal case against another person. *People* v. *Marchand*, 53 P.R.R. 640; *People* v. *Camacho*, 66 P.R.R. 810; *People* v. *Márquez*, 67 P.R.R. 303; *Donnelly* v. *United States*, 228 U.S. 243, 57 L. Ed. 820; 162 A.L.R. 450; 133 A.L.R. 1455; 48 A.L.R. 348; 22 C.J.S. p. 1286, § 749; 26 Am. Jur. 420; *People* v. *Lettrich*, 108 N. E. 488; *Owensby* v. *State*, 2 So. 764. The underlying reason for the nonadmission of such confession made out of court is that it is hearsay evidence and, hence, inadmissible. In some of the cases above cited, the person making the confession was deceased at the time it was offered in evidence. In other cases that person was not present in the courtroom or reference was made to the confession to impeach the testimony of another person who, when questioned in connection therewith, denied any knowledge.

Those cases are, however, distinguishable from the case at bar. In *People* v. *Marchand, supra,* the counsel for the defendant tried to draw some sort of an admission or guilt from Antonio Rivera Córdova, their first witness. The witness denied any knowledge and also emphatically denied having confided in a third person. Immediately thereafter defendant placed another witness on the stand and asked him whether Rivera Córdova had said anything to him. The district attorney objected to the question and, after the jury was withdrawn from the courtroom, argued extensively with regard to the inadmissibility of any statements which Rivera Córdova might have made to the witness. His objection was

sustained. Counsel for defendant then moved to be allowed to impeach his own witness, Rivera Córdova, by introducing evidence to show prior inconsistent statements. The district attorney objected and was again sustained by the court. In the course of the opinion this Court stated at p. 646:

". . . We are more or less convinced that if the testimony offered was not admissible *per se,* it was correctly excluded when an attempt was made to introduce it for the purposes of impeaching the defendant's own witness. . . . From the highest court of the United States downward, it has been consistently held that such evidence is not primarily admissible."

citing 35 A.L.R. 441 and 48 A.L.R. 348, and indicating that the case of *Donnelly* v. *United States, supra,* is a leading authority for that view. It was pointed out, however, that "in Texas and perhaps a few other jurisdictions, there has been some departure from the general rule," and that "the tendency, even in those exceptional jurisdictions, has been to relax from the application of the rule only in extreme cases where the evidence against the defendant is entirely circumstantial and the case is surrounded with other special circumstances, not evident in the case at bar." It was therefore admitted that the foregoing rule has its exceptions.

In *People* v. *Camacho, supra,* appellant was convicted of the crime of murder in the second degree committed on the person of *Fabián de Jesús.* The jury found him guilty of voluntary manslaughter. The evidence of The People was direct. The defense called one Flores to the witness stand, and asked him certain questions tending to establish a confession from *Francisco de Jesús.* The rule above enunciated was reaffirmed on appeal.

In *People* v. *Márquez, supra,* Pedro Márquez was charged with murder in the first degree for the killing of Pedro A. Pagán and sentenced to life imprisonment. On appeal, he alleged that the trial court erred in not permitting the jury to hear and consider the testimony of defendant's witnesses, Pedro Antonio Maysonet and Pedro Antonio Díaz. The pur-

pose of the testimony of these witnesses was to show that the crime was not committed by the defendant but by a third party named Pedro Huertas Torres, who allegedly made statements in connection with the death of Pagán in the presence of witnesses Maysonet and Díaz. Citing the case of *Marchand Paz, supra*, it was stated at p. 306 that: "Evidence to establish the affirmative defense of confessed guilt by another is inadmissible."

In *Donnelly* v. *United States, supra*, Donnelly was prosecuted and convicted of the crime of murder for killing an Indian. One of the questions raised on appeal was whether the evidence tending to show that one Joe Dick had confessed was properly excluded. Dick was dead when Donnelly came up for trial. The Supreme Court of the nation held that the lower court properly excluded hearsay evidence. In the course of the opinion, that Court made reference to the rule excluding hearsay evidence, pointing out that in this country there is a practically unanimous weight of authority in the state courts against admitting confessions of third parties made out of court and tending to exonerate the accused. Justice Holmes, however, dissented in that case, and Justices Lurton and Hughes concurred in his dissenting opinion.

The rule against admitting confessions made out of court by a third party is, in our judgment, altogether correct and wise. It must be admitted, however, that it has been ruthlessly criticized both by some courts and by learned text writers. For example, Professor Wigmore in his well-known text on *Evidence*—vol. V, 3d. ed., p. 289—after making reference to the rule under comment, citing the dissenting opinion of Justice Holmes in *Donnelly* v. *United States*, and pointing out why it has been held that the confession of a third party is inadmissible in evidence, states as follows:

"It is therefore not too late to retrace our steps, and to discard this barbarous doctrine which would refuse to let an innocent accused vindicate himself even by producing to the tribunal a perfectly authenticated written confession, made on

the very gallows, by the true culprit now beyond the reach of justice. Those who watched (in 1899) with self-righteous indignation the course of proceedings in Captain Dreyfus' trial should remember that, if that trial had occurred in our own Courts, the spectacle would have been no less shameful if we, following our own supposed precedents, had refused to admit what the French Court never for a moment hesitated to admit, —the authenticated confession of the absconded Major Esterhazy, avowing himself the guilty author of the treason there charged, and now known beyond a doubt to have been the real traitor."

 Be that as it may, the situation in the instant case is altogether different. Here we are not concerned with confession made out of court by persons outside the reach of the court. On the contrary, we are concerned with statements made by persons who are present in court, and who were ready and willing to testify on facts of their own personal knowledge connected with the commission of the crime with which the accused was charged. Those statements were clearly admissible. It was therefore a prejudicial error to exclude such statements and, hence, the reversal of the judgment appealed from is in order.

In treating a situation similar to that herein involved, Wharton in his text on *Criminal Evidence*, 11th ed. (1935), vol. 1, § 274, p. 348, states as follows:

*"The defendant in a criminal prosecution may, by proper evidence, prove that another person committed the crime with which he is charged, where the guilt of such other person is consistent with the innocence of the accused."* (Italics ours.)

In discussing the defense of alibi, Underhill in his text on *Criminal Evidence*, 4th ed., says at p. 588, § 296:

"It frequently happens that the accused resorts to the defense that another committed the crime, especially where the states' evidence is circumstantial. *Such evidence is generally held admissible if relating to the res gestae, if guilt of the other party is consistent with innocence of the defendant, and there are facts in evidence pointing to the guilt of someone other than*

644

*the accused.* If the evidence is circumstantial, every reasonable avenue should be explored and no evidence tending to show guilt of another should be excluded, unless too indefinite or remote in time." (Italics ours.)

In discussing the question of the commission of a crime by a third person, Wigmore ends by saying in his *op. cit.*, 3rd ed., § 139, pp. 573, 574, that:

". . . while if it is in truth calculated to cause the jury to doubt, the Court should not attempt to decide for the jury that this doubt is purely speculative and fantastic, but should afford the accused every opportunity to create that doubt. A contrary rule is unfair to a really innocent accused."

See also 26 Am. Jur. 382 and 420, §§ 335 and 380; 15 Am. Jur. 22, § 331; 121 A.L.R. 1363; *Hines* v. *Com.*, 136 Va. 728; 117 S. E. 843; 35 A.L.R. 431; *State* v. *Russell*, 220 Pac. 552; *Commonwealth* v. *Murphy*, 185 N. E. 486; *Quinn* v. *State*, 25 P.2d 711, 714; *Horn* v. *State*, 73 Pac. 705; *Phillips* v. *State*, 203 Pac. 902.

The courts of the State of California, from which both our Penal Code and Law of Evidence were taken, express the view that "this court (Supreme Court of California) has held that it is always proper to show that some other person, and not the defendant, committed the crime with which the latter is charged." *People* v. *Erno*, 232 Pac. 710, 713; *People* v. *Perkins*, 59 Pac. 2d 1069, 1074; *People* v. *Vatek*, 236 Pac. 163, 171.

The case of *Thomas* v. *State of Maryland*, 167 A.L.R. 390, 47 A. 2d 43, is akin to the case at bar. The facts of that case were as follows: On July 16, 1945, shortly after 6 p.m., James Furbush, an elderly man who lived alone, was found fatally injured in the living room of his home. On July 20 he died in a hospital as a result of the wounds received. Wilbert Melvin and his wife Nellie were arrested on a charge of murder. The next day each signed a statement regarding the assault, and several days later they were held for the action of the grand jury. In September, however, William

Albert Thomas was arrested and charged with assault upon Furbush with intent to rob, and in November he was indicted for murder. At the trial against Thomas the State introduced in evidence a confession signed by the defendant in the presence of the sheriff and two State police officers; but the defendant, taking the stand in his own defense, swore that he was unable to read and that he thought the confession related to an assault upon another man, Hickey Cooper. Wilbert Melvin, called as a witness for the defendant, testified that he went to Furbush's home on July 16, but left for Centerville to get some liquor, and when he returned he found that Furbush had been injured. The Court did not allow Melvin to answer whether he had been arrested upon the death of Furbush, or whether he had signed a statement regarding the murder. When shown the statement purporting to have been signed by him on July 21 in the presence of the sheriff and two other officers, he acknowledged that the signature looked like his, but the Court refused to admit the statement in evidence. The Court also refused to admit Melvin's wife's statement in evidence. In the course of its opinion, the Maryland Court of Appeals considers the rule relating to the exclusion of extrajudicial confessions made by third persons, cites the case of *Donnelly* v. *United States*, *supra*, and makes reference to the criticism of that rule by Professor Wigmore branding it as a "barbarous doctrine." The Maryland Court ends by stating:

". . . we hold that where a witness has made a written confession that he committed the crime with which the defendant is charged, the defendant should be allowed to introduce confession in evidence and question him in regard to the confession and the circumstances under which he made it."

We fully subscribe to the rule enunciated by all those cases and text writers. That rule in no wise repeals the rule established in *Donnelly* v. *United States*, *supra;* on the contrary, it enhances it.

The case at bar, we repeat, is distinguishable from *People* v. *Marchand*, *People* v. *Márquez*, and *People* v. *Camacho*, decided by this Court, as well as from *Donnelly* v. *United States*, and others which have adhered to the rule on extrajudicial confessions therein enunciated. We are not concerned here with an extrajudicial confession made by a third party, long since deceased and outside the reach of the court, but with the testimony of eyewitnesses, which in itself was admissible in evidence. Defendant had a right to demand that that testimony be received by the jury who heard the case. It can not be denied that his rights were prejudiced by the refusal to allow them to testify and to permit the jury to receive their testimony.

In view of the foregoing conclusion, we need not discuss the other assignments.

The judgment appealed from will be reversed and the case remanded to the Superior Court of Puerto Rico, San Juan Part, for a new trial.