492 A.2d 926

**Curtis Lee SMITH, Jr.**

v.

**STATE of Maryland.**

**No. 1265, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 20, 1985.

Michael R. Malloy, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore, Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty. for Prince George's County and Michael Whalen, Asst. State's Atty. for Prince George's County, Upper Marlboro, on brief, for appellee.

Argued before WILNER, BLOOM and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Curtis Lee Smith, appellant, has appealed from the denial, by the Circuit Court for Prince George's County (Femia, J.)

of his motion for a new trial. Because we find the trial court erred when it refused to compel the testimony of one of the witnesses produced at the hearing, we will reverse and remand to that court for further proceedings.

Appellant was tried by a jury presided over by Judge Femia. Despite relatively weak identification testimony produced by the State and strong alibi evidence presented by the appellant, the jury returned verdicts of conviction for robbery, rape, burglary and certain other related charges.[1] Judge Femia, although he expressed doubt as to the guilt of appellant, sentenced appellant to life plus 30 years for the convicted counts. This court affirmed the convictions in an unreported per curiam opinion, *Curtis Lee Smith, Jr. v. State of Maryland*, No. 1642, September Term, 1982, filed July 1, 1983, in which the author suggested that the panel might have decided the case differently were it to have been the triers of fact, a sentiment underlined by the concurring opinion. Nevertheless, the judgments were affirmed, and appellant subsequently moved for a new trial.

In his motion, appellant alleged the existence of newly discovered evidence, not available to him when he was tried.[2] Hearings were held on the motion on two days, June 27, 1984 and October 10, 1984. On June 27th, testimony

---

1. The charges arose out of events which occurred on December 21, 1981 and involved the Pasco family. Hereinafter when referring to these charges or events, we will sometimes refer to "the Pasco incident."

2. The appellant presented at his trial, evidence that he did not commit the offenses, rather, that they were committed by Grady Sweet, Owen Marsh, Gregory Marsh and Philip Yarborough. In fact, appellant called Owen Marsh and Grady Sweet as witnesses at his trial; both of them refused to testify on the basis of the Fifth Amendment privilege against self-incrimination.

was taken from Kenneth Plummer, Horatio Sales,[3] Grady Sweet, and Philip Yarborough.[4]

Sweet, who was serving a twenty year sentence pursuant to a plea to three counts of armed robbery and a related count of use of a handgun in the commission of a crime of violence arising out of the Pasco incident, testified that appellant was not a participant in the crimes. Although he admitted his complicity, his testimony was replete with attempts to minimize his involvement in the specific acts constituting the crimes and to protect his co-defendants to the fullest possible extent. Yarborough, who pled guilty to a misdemeanor theft charge arising out of the Pasco incident, denied any involvement in the crimes, claiming to have been asleep in Sweet's car both prior to and after its perpetration. He also denied that appellant had been in Sweet's car or that he had even seen appellant prior to June 27, 1984.

Plummer and Sales were serving sentences for unrelated offenses[5] when they testified. Plummer testified that while he and Owen Marsh were on the same cell block at the Prince George's County Detention Center, Marsh told him "... that he don't see how they got Curtis for [the Pasco crimes] because he wasn't never there, he didn't do it, they got him for something he didn't do." As a result, Plummer contacted his lawyer and eventually gave a statement to Detective Herl on December 7, 1982, after appellant's conviction. Sales' testimony was that Owen Marsh admitted to Sales that he (Marsh) raped Mrs. Pasco and participated in the crimes in her home. In addition, Sales testified that Sweet told Owen Marsh, in his presence, that appellant, the wrong man, had been charged so that Marsh "didn't have anything to worry about" and that Sweet

---

**3.** This name is variously spelled "Sales" and "Sails" throughout the transcript. For purposes of this opinion, the spelling set forth in the text will be used.

**4.** Grady Sweet's mother also testified. Her testimony was not very helpful on the motion.

**5.** Sales was serving a fifty year sentence for murder and Plummer was serving a sentence for armed robbery.

pointed appellant out to Sales as a person, whom Sweet had never seen before, who had been charged with Sweet in the Pasco incident.

Owen Marsh's absence was most conspicuous. Owen Marsh was viewed by Judge Femia as being the key to appellant's case on the motion:

> So, your first witness [Sweet] is a liar, your second witness [Yarborough] is a liar, but a nice-looking liar, your third witness, Mrs. Sweet, is a nice lady, but she can't be called to do anything. She was available. Your fourth and fifth witnesses aren't available as evidence in this case. Marsh is the answer to this case. I don't care what Marsh wants to do, get him on the witness stand, make him take the Fifth, I will override the Fifth and let's go. Marsh is the key to this case.

Therefore, anticipating appellant's request, Judge Femia did not rule on the motion on June 27th, rather, he left the issue open and continued the hearing for several months to allow appellant to locate and summons Owen Marsh.

Owen Marsh appeared with counsel on October 10, 1984. Marsh had been charged in an eighteen count indictment, with the crimes arising out of the Pasco family incident. He had pled guilty to count 12, felony theft, in exchange for a suspended sentence and probation and the nol pros of the remaining counts. As a threshold issue, Marsh's counsel objected to any questions and inquired of the State and the court as to Marsh's exposure to further prosecution for crimes committed against the Pasco family. The prosecutor ultimately responded:

> Your Honor, I didn't say I think I had the options. It was my opinion, not being a jurist, that the State would be precluded from reinstituting any charges arising out of this incident against Mr. Marsh. I don't happen to be a judge. I don't know what my research would bring.

Judge Femia then ruled:

> *Megrogan* [sic][4a] seems to be saying, if the nol prosses were entered up on the balance of the cases in order to

---

4a. *Magrogan v. State,* 56 Md.App. 289, 467 A.2d 784 (1983).

induce his plea, it [sic] can't be reinstituted. That's the plain language of *Megrogan*. Therefore, this man, I will now rule, is not immune in the legal sense of the Court in the term of art used, but the charges cannot be reinstituted against him under the *Megrogan* case. He made a deal; the deal was, drop these charges, I'll plead to that. That was the inducement for his plea. The other charges cannot be reinstituted. Therefore, he is not at jeopardy under the scenario with which we are dealing. Therefore, I will compel him to testify and overrule your Fifth Amendment objection. However, I want him to clearly understand, Mr. Kenkel, that has to do with this case, this indictment. ...[A]s it relates to this case, if he is taking the Fifth Amendment, based upon jeopardy in this case, I'll overrule his claim of the Fifth Amendment as to the events of December 21, 1981. If that's his claim of Fifth Amendment, I am going to overrule his claim and compel testimony.

Following consultation between Marsh and his counsel, the following colloquy then occurred:

Mr. Kenkel: ...Mr. Marsh has requested I advise the Court he understands he was indicted in an eighteen count indictment; that he pled guilty to one of those counts; that the other seventeen were dismissed or nol prossed.

The Court: Which the Court considers to be a dismissal with prejudice.

Mr. Kenkel: Dismissal and that he cannot be recharged for any of those seventeen counts.

He says since the State may or may not wish to charge him, based upon his testimony or otherwise for any uncharged counts such as conspiracy, accessory before or after the fact, respectfully, he declines to answer any other questions and asserts his Fifth Amendment right.

The Court: All right, Ms. Durovic, you may now proceed to inquire. I am not ordering him to answer...

Needless to say, appellant's inquiries went for naught since Marsh invoked his privilege against self-incrimination as to each question posed.

Having refused to compel Marsh's testimony and following arguments of counsel, Judge Femia denied appellant's motion for a new trial:

> It's the fifth base [5] that I have been having tremendous problem with and I spent the majority of my time on, at least my consideration of it. It must be such and of such nature as that on a new trial, the newly discovered evidence would probably produce acquittal. Quite frankly, that's where the evidence falls flat on its face. In my opinion, I just don't have in my opinion at this point, even giving it its kindest interpretation, any credible evidence whatsoever. Sweet, I must categorize Sweet as totally incredible, totally incredible. In fact, I'm afraid that during the hearing of June 27th, I evidenced my aggitation [sic] of the incredible nature of his testimony. I thought Yarborough was credible, believed him. He didn't say anything relevant, but I believed him. So, while he misses base four, Sweet, Plummer and Sails don't even come near to touching base five, being credible.
>
> Try as I may, the only reason I could possibly grant a new trial with the state of the facts before me this evening would be out of sheer sympathy with the Defendant. While I have said it before, I'll say it again, I'm totally sympathetic with this Defendant. While I'm wear-

---

5. *Jones v. State,* 16 Md.App. 472, 477, 298 A.2d 483 (1973) set out the test for evaluating newly discovered evidence:

> There must ordinarily be present and concur five verities, to wit: (a) The evidence must be, in fact, newly discovered, i.e. discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. (citations omitted)

Judge Femia found that four of the five "verities" had been met.

ing this robe, I cannot do that which the law does not permit. Even though I sit here in my heart and believe there's another human being that we have made a mistake this time, but the mistake has been made under the rules and pursuant to the law and it's a terrible thing, but I do not believe, consistent with my oath, I will obey the law and the rules, that I can grant a new trial. For those reasons, I deny it.

## I.

Against this backdrop, appellant contends that Judge Femia erred in refusing to compel Marsh's testimony concerning the crimes committed on December 21, 1981 against the Pasco family. Judge Femia specifically ruled that none of the charges contained in the eighteen count indictment could be reinstituted and, as such, Marsh was a compellable witness as to those charges. He then ruled that uncharged crimes, such as conspiracy or accessory, arising out of the events of December 21, 1981, could be brought; thus, the privilege against self-incrimination was available with respect to such crimes.

Although we agree with Judge Femia that none of the charges contained in the indictment could be reinstituted, *Banks v. State,* 56 Md.App. 38, 466 A.2d 69 (1983); *Magrogan v. State,* 56 Md.App. 289, 467 A.2d 784 (1983), because jeopardy attached when Marsh's guilty plea was accepted and Marsh had not challenged or breached his plea agreement, *Sweetwine v. State,* 288 Md. 199, 421 A.2d 60, *Cert. den.* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980), we reject his ruling that uncharged offenses arising out of the same incident could have been charged. The State concedes that Marsh cannot be charged with conspiracy or accessory before or after the fact arising from the Pasco incident. In the context of the case *sub judice,* a conspiracy charge is barred by limitations. Conspiracy, a common law misdemeanor, *McMorris v. State,* 26 Md.App. 660, 338 A.2d 912 (1975), aff'd 277 Md. 62, 355 A.2d 438

(1976), is subject to a one year statute of limitations, Md. Code Ann., Courts Article, § 5–106(a). Moreover, Marsh's plea to felony theft, of necessity, made him a principal to all of the crimes charged. A principal cannot be convicted as an accessory. See, *Cooper v. State,* 44 Md.App. 59, 407 A.2d 756 (1979).

The State, while conceding that Marsh could not be prosecuted for any crimes, nevertheless, argues that Judge Femia was correct in refusing to compel Marsh's testimony because "[g]iven the heinousness of the crimes which were perpetrated upon the Pasco family later that evening, it is reasonable to infer that Marsh and his companions may have engaged in illicit drug use that evening or in another rape, robbery or other crimes wholly unrelated to the Pasco incident." We find this argument to be totally devoid of merit. First, the objection raised and the privilege invoked were based upon uncharged crimes arising out of the Pasco incident. There was absolutely no suggestion that the privilege was sought for unrelated crimes. Secondly, Marsh's testimony was sought only in connection with the Pasco incident and the judge ruled that his compulsion to testify would relate only to those events. In any event, Marsh's right to invoke his privilege against self-incrimination as to unrelated offenses and his compulsion to testify as to the Pasco incident easily could have been made compatible by Judge Femia ruling on the appropriateness of the privilege on a question by question basis. After all,

"...[T]his protection [the right to invoke the Fifth] must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.... The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, ... and to require him to answer if "it clearly appears to the court that he is mistaken" ...

*Richardson v. State*, 285 Md. 261, 266, 401 A.2d 1021 (1979), citing *Hoffman v. U.S.*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

■ The State's argument that this issue has not been preserved for appellate review is similarly without merit. This argument is premised on the failure of appellant to object to Judge Femia's ruling that he would not compel Marsh's testimony and on the fact that no request to compel Marsh's testimony was made by appellant. Maryland Rule, 4–322 provides, in pertinent part:

  (c) Objections to Other Rulings or Orders.—For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

  (d) Formal Exceptions Unnecessary.—A formal exception to a ruling or order of the court is not necessary.

The importance of the testimony of Marsh and the means of obtaining that testimony was discussed at the hearing on June 27th. That hearing was continued for the purpose of locating and bringing Marsh into the court. Judge Femia specifically commented on the possibility that Marsh would take the Fifth and intimated how he would handle that eventuality. Marsh was brought to court solely for the purpose of testifying on the motion with the realization that he might take the Fifth as he had previously done. When viewed in this context, that is, in conjunction with the June 27th hearing, we find the issue to have been properly preserved. We know of nothing further that appellant could have done to apprise Judge Femia of "the action that the party desire[d] the court to take."

Having concluded that Judge Femia erroneously refused to compel Marsh's testimony concerning the events of December 21, 1981, we will remand the case to the Circuit Court for Prince George's County for further proceedings, consistent with this opinion, on the motion for new trial.

## II.

Because it might be relevant on remand, we will consider appellant's contention that Judge Femia erroneously concluded that the testimony of Plummer and Sales would be inadmissible hearsay at a new trial. At the outset we note that Judge Femia appears to have given two bases for discrediting this testimony: on June 27, 1984, he said that Plummer and Sales were not "available as evidence in this case," presumably on the basis that their testimony was hearsay, and on October 10, 1984, he said "Plummer and Sails [sic] don't even come near to touching base five, being credible." Our comments relate not only to Judge Femia's apparent conclusion that the testimony would be inadmissible as declarations against penal interest, but to the standard he may have employed to determine its admissibility, as well.

Declarations against penal interests are admissible in Maryland as an exception to the hearsay rule, *Agnew v. State,* 51 Md.App. 614, 446 A.2d 425 (1982), *Jacobs v. State,* 45 Md.App. 634, 415 A.2d 590 (1980), *Harris v. State,* 40 Md.App. 58, 387 A.2d 1152 (1978), so long as they are material, relevant and competent, *Jacobs v. State, supra* and otherwise trustworthy. *Agnew v. State, supra.* Thus, where a declarant is presently unavailable, as, for example, because of the invocation of his privilege against self-incrimination, *Harris v. State, supra,* and "... unless ... clearly collusive, frivolous or otherwise obviously untrustworthy," such statements should be admitted and considered by the trier of facts on the issue of an accused's guilt. *Dyson v. State,* 238 Md. 398, 407, 209 A.2d 609 (1965) *vacated on other grounds,* 383 U.S. 106, 86 S.Ct. 717, 15

L.Ed.2d 617 (1966). The determination of the trustworthiness of such statements is entrusted in the first instance to the sound discretion of the trial judge. *Brady v. State*, 226 Md. 422, 174 A.2d 167 (1961). However, we said in *Harris v. State, supra,* that the declaration itself, standing alone, provides an inherent indicium of trustworthiness; therefore, "... only in those cases where there is evidence that the out-of-court declaration is untrustworthy, frivolous, or collusive should the jury be precluded from receiving and assessing the statement. To hold otherwise would serve to usurp the traditional role of the jury as trier-of-fact and, concomitantly, deprive an accused of his right to due process under the law." *Id.* 40 Md.App. at 65, 387 A.2d 1152. *Harris,* involved the admissibility of declarations against penal interests at trial and not whether such statements would justify a new trial. Nevertheless, we deem the *Harris* test to be equally applicable to the case *sub judice.*

In the instant case, the testimony of Plummer and Sales was material and relevant. It was also competent, for it contained declarations against penal interests of both Marsh and Sweet made at a time prior to their entering into plea agreements, under circumstances where their disserving quality was obvious, no probable motive to lie was present, and from which the relevant portions of the declarations could clearly be seen to relate to the declarations' disserving character. *Agnew v. State, supra.* There were no circumstances presented, except speculation and the criminal records of Plummer and Sales, from which a finding of untrustworthiness could be found. *Harris, supra.* Marsh invoked his Fifth Amendment privilege, thus, he was unavailable; therefore, Marsh's statements were admissible as declarations against penal interest.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS, NOT INCONSIST-

ENT WITH THIS OPINION, ON THE MOTION FOR NEW TRIAL.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.