## THE STATE v. HACK, *Appellant.*

### Division Two, November 21, 1893.

1. **Criminal Law:** PRACTICE: EVIDENCE. In a criminal case, the defendant cannot introduce the admissions of a third party tending to show that such party, and not the defendant, committtted the crime charged.

2. ——: ——: ——: IMPEACHMENT. A female witness may be asked on cross-examination, for the purpose of affecting her credibility, whether she had not, at different places, kept girls for the purpose of prostitution.

3. ——: ——: ——: ——. An inquiry may be made of a witness tending to show his corruption, and for that purpose he may be asked if he had not hired or attempted to hire another witness to absent himself from the trial, and such fact may be shown.

4. ——: ——: REMARKS OF COUNSEL. Argument of prosecuting counsel to the effect that the defendant should have introduced evidence of his good character to show that he was not liable to be guilty of the crime charged is not objectionable, where defendant was a witness in his own behalf.

The State v. Hack.

5. ——: ——: ——. Where such remarks were objected to at the time and the prosecutor desisted from pursuing them further and the court at the close of the argument told the jury that defendant's good character was not in issue; that there was no evidence on that point and the law presumed his character to be good and that the remarks were improper and should be disregarded, any evil influence upon the minds of the jury was thereby counteracted.

*Appeal from St. Louis Criminal Court.*—HON. HENRY L. EDMUNDS, Judge.

AFFIRMED.

*R. F. Walker*, Attorney General, and *C. O. Bishop* for the state.

(1) The conversation between Brown and defendant's mother in regard to the watch and chain in question was properly excluded. It was an effort to introduce the admission of a third party that he had committed the offense charged, such admissions by a third party are not competent. *State v. Evans*, 55 Mo. 460; *State v. Duncan*, 116 Mo. 288. (2) Mrs. Burkhardt was asked upon cross-examination whether she had not at divers places, kept girls for the purpose of prostitution; to which objection was made by appellant and objection overruled. She answered that she had not done so, and that was the end of the matter, for it was not further pressed and no attempt was made to contradict her statement. The question was competent as affecting her character as a witness—for a witness always puts his character in issue. Assuming, however, that it was not a competent question, it is difficult to see how the result could possibly have been affected, for it is not every error that is prejudicial. The answer being a positive denial, and so remaining, there was no "admission of improper, illegal and incompetent testimony," as claimed in the motion for new trial.

(3) Mrs. Burkhardt was also asked and, over objection, required to answer whether she had not offered the prosecuting witness money to leave town and not appear against her son. This question was unquestionably competent as tending to show the animus and bias of the witness, and it is well settled that answers may be compelled to any question as to the witness' corrupt or interested leanings in the case. Wharton on Criminal Evidence, sec. 476; 1 Wharton on Evidence, sec. 547; 1 Greenleaf on Evidence, 462 (last paragraph); *Attorney General v. Hitchcock*, 1 Ex. 93; *State v. Downs*, 91 Mo. 19. (4) The instructions correctly declared the law. (5) It may be conceded that the remarks of the circuit attorney set out in the record were indefensible. But at the conclusion of the argument, the court solemnly warned the jury that the remarks of the prosecutor were improper, and should be entirely disregarded by them, so that they passed to their deliberations with this judicial adjuration ringing in their ears. Yet appellant excepts to the action of the court.

BURGESS, J.—The defendant was jointly indicted with one Patrick Brown, in the St. Louis criminal court, for the crime of burglary in the first degree and grand larceny in stealing from a dwelling house. At the regular term next thereafter a severance was ordered and the defendant put upon his trial. He was acquitted of burglary and convicted of grand larceny, his punishment being assessed at three years in the penitentiary. After unsuccessful motions for a new trial and in arrest he appealed to this court.

The testimony on the part of the state tended to show that Valentine Gardner, the prosecuting witness, resided on the ground floor of the building number 722, Clark avenue, in the city of St. Louis, his prem-

ises consisting of two rooms and a kitchen; he slept in the front room; he was acquainted with both defendants; was in their company on the evening of October 12, 1892, and until about two o'clock in the morning of October 13; they were drinking together. At the hour named, Gardner went home, and to bed, closing the door and two windows of his sleeping room; as he undressed, he put his clothes upon a chair; in his vest pocket was a gold plated watch and chain (of the aggregate value of about $75), also his pocketbook, containing about $18 or $20. He got up about half past six in the morning, found one of the windows up and the door open, and discovered that the watch, chain and money were gone. He met defendants during the forenoon and spoke to them about his loss, and they declared to him that they knew nothing about the missing articles. On that same morning, however, shortly after five o'clock, the defendant went into the secondhand store of one Abe Gallant with the watch in question and offered it for sale; while they were negotiating the terms, defendant Brown came in with the chain and offered it for sale; Gallant consented to pay for the two articles $21, and gave defendant $11 for the watch and Brown $10 for the chain. Both defendants lived upstairs over Gallant's store, with one Justine Burkhardt, the mother of defendant, who rented from Gallant and kept a boarding house. A police officer came into the store during the forenoon, and recovered the watch and chain, and afterward arrested the defendant and Brown. Both denied all knowledge of the property but appellant afterwards stated to him that he had obtained the watch from Brown, and admitted that he disposed of it to Gallant.

The testimony on the part of the defense tended to show that defendant came into his sleeping apartment, at his mother's, and went to bed between eleven

and twelve o'clock that night; that he came in alone and remained there during the night, but that Brown came in about two o'clock in the morning; waked up Mrs. Burkhardt and had a talk with her, holding something in his hand, and that although defendant woke up at the time, he did not get out of bed.

Mrs. Burkhardt testified that Brown had a watch and chain in his hand at the time, and defendant undertook to show by her the conversation between her and Brown regarding the watch and chain, but on the objections of the state, the evidence was excluded.

While on the stand, under cross-examination by the state, Mrs. Burkhardt was asked by the circuit attorney, "whether or not she had at divers places kept girls for the purpose of prostitution?" Defendant objected; the objection was overruled by the court, and she answered that she had not done so. She was also asked, on cross-examination, "whether she had not, at the preliminary examination of this case, in the court of criminal correction, offered the prosecuting witness the sum of $300 if he would get out of town and not appear as a witness against her son (the defendant)." Over defendant's objection, the court permitted the question to be pressed, and she answered that she did not, but that on the contrary, the prosecuting witness offered to go out of town and drop it if she would give him that amount. She also stated that she slept in a room adjoining that of her son, with a man to whom she was not married, but whom she expected to marry "in July next" (the trial being in February).

Defendant testified in his own behalf and stated, that he went to bed about eleven o'clock on the night of October 12; that he was awakened about two o'clock in the morning, and heard Brown asking his mother for $10, holding a watch in his hand; that his

mother refused, and asked whose watch it was, but he did not hear the remainder of the conversation, as he went to sleep again; that he saw Brown about seven o'clock in the morning, who then had "Gardner's watch and chain," and asked him (defendant) to go with him to Gallant's to borrow some money on a watch; that Brown stated that he had got the watch from Gardner; that he went with Brown and got $10 himself on the watch; that he knew it was Gardner's watch as he had once redeemed it from pawn for Gardner. He admitted that he and Brown had been drinking with Gardner the night before, and that when arrested he had told the officer that he knew nothing about the watch.

In rebuttal, over defendant's objection, the state was permitted to show by the prosecuting witness that while the preliminary examination of this case was pending in the court of criminal correction, Mrs. Burkhardt offered him $300 to leave town and not appear as a witness against her son (the appellant).

The court instructed the jury to acquit of burglary and submitted the question of guilt of larceny from a dwelling house, punishment conditioned upon the ascertained value of the property, whether of the value of $30 or less. The court also instructed upon the presumption of recent possession, *alibi*, credibility of witnesses, presumption of innocence and reasonable doubt.

The record shows that the circuit attorney in his closing address to the jury used the following language: "Gentlemen of the jury, the counsel for the defendant has given you several illustrations of how innocent men may come into possession of stolen property. That is all right; but what would you do, or any innocent man do, were he found in possession of stolen

VOL. 118—7

property? Why, he would introduce witnesses to prove that he had a good character, which would show that he was not liable to be guilty of such a thing." When defendant objected to the remarks, nothing further was said on that point by the circuit attorney, and the court said nothing at the time, but at the close the court said to the jury: "Gentlemen, the defendant's character is not in issue; he has introduced no evidence of good character, but the law presumes his character to be good; the state is not permitted to attack his character and the remarks of the circuit attorney were improper and should be entirely disregarded by you." No brief has been filed by defendant.

The first ground assigned as error in defendant's motion for a new trial deemed worth of attention is the action of the court in instructing the jury. No particular objection is made to any of the instructions and after a careful examination of them, we have been unable to find any objection thereto. They seem to present the law of the case as we understand it and are eminently fair and just to the defendant. He had no cause for complaint in regard to them.

It is also urged that the court committed error in admitting illegal, improper and incompetent testimony on the part of the state and in excluding proper, legal and competent testimony offered by the defendant. No testimony in chief was admitted on the part of the state over the objection of the defendant. But when Mrs. Burkhardt, defendant's mother, was testifying as a witness in his behalf, it was attempted to prove by her a conversation between her and defendant's codefendant, Brown, in regard to the watch and chain in question which was excluded by the court on the objection of the prosecuting attorney. This evidence was offered for the purpose of proving by the admission of Brown that he had

committed the larceny and not the defendant on trial. This evidence was mere hearsay and clearly inadmissible. *State v. Evans*, 55 Mo. 460; *State v. Duncan*, 116 Mo. 288. In a criminal case, the defendant cannot introduce the admissions of a third party tending to show that such party, and not the defendant, committed the crime charged.

This witness was also asked, on cross-examination, whether she had not, at different places, kept girls for the purpose of prostitution, to which objection was made by defendant and the objection overruled. She answered in the negative, and no evidence was offered by the state to contradict her in this statement. This inquiry was proper as the prosecution had the right to know her vocation and what she had been and was then engaged in as affecting her credibility. 1 Greenleaf on Ev., sec. 456; *State v. Grant*, 79 Mo. 113.

She was also asked, and, over objection by defendant, required to answer whether she had not offered the prosecuting witness, Gardner, money, to leave the city and not appear against her son. It was held by this court in the case of *State v. Down*, 91 Mo. 19, that when a witness for the state denies, on cross-examination, at a designated time and place he agreed to leave and not testify against the defendant in consideration of $100, that he may be contradicted by the defendant as it is not a collateral matter but goes directly to the credit of the witness showing him to be corrupt. If the inquiry tends to show the corruption of the witness it is permissible. Wharton's Law of Evidence [3d Ed.]. sec. 547; 1 Greenleaf on Evidence [15 Ed.], sec. 462. It is difficult to conjecture what would be more cogent proof of the corruptness of a witness than to show that he had hired or attempted to hire, by the use of money, another witness to disappear, or absent himself from the place of trial.

The only remaining question is as to the remarks of the circuit attorney in his closing address to the jury, which are heretofore set forth in this opinion, and which were objected to by defendant at the time. When the objection was made, the circuit attorney desisted in his objectionable remarks and at the conclusion of his address, the court directed the jury to disregard them, conceding that the remarks were objectionable and out of place. While we see nothing objectionable in the remarks objected to, the court by his direction to the jury to disregard them counteracted any baleful influence they may have had on the jury, or any prejudice that may have been created in their minds against the defendant by reason thereof.

We have been unable to discover any error in the record which would justify a reversal of the judgments and it will, therefore, be affirmed. All concur.