STATE of Missouri, Plaintiff–
Respondent,

v.

Kevin SCOTT, Defendant–Appellant.

No. 24221.

Missouri Court of Appeals,
Southern District,
Division Two.

July 12, 2002.

Craig A. Johnston, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Kevin Scott (defendant) was convicted following a jury trial of two counts of statutory rape in the first degree (Counts I and II), § 566.032,[1] and three counts of forcible sodomy (Counts III, V and VII), § 566.060.[2] A.L. was the victim in the offense charged in Counts I and II. K.L. was the victim in Count III. C.T. was the vic-

---

1. References to statutes are to RSMo 1994.

2. Four other charges, three counts of statutory sodomy in the second degree, § 566.064, (Counts IV, VI and VIII) and one count of statutory rape in the second degree, § 566.034, (Count IX) were nolle prosequied by the state prior to trial.

tim in Count V. K.K. was the victim in Count VII. This court affirms.

 For purposes of appellate review, evidence that supports the verdict is taken as true, together with all reasonable inferences favorable to the verdict. Evidence to the contrary is disregarded. *State v. Barrett,* 41 S.W.3d 561, 563 (Mo.App.2001).

K.L., her sister, A.L., and their mother were sharing a trailer house at Pineville, Missouri, with C.T. and her mother. On July 2, 1997, the girls' friend, K.K., was spending the night with them at the trailer. A.L. was 13 years old. The other girls were 14. The mothers were at work.

At approximately 9:30 p.m., defendant and a friend came to the trailer house. Defendant was an acquaintance of K.L.'s and A.L.'s parents. Defendant asked if the parents were home. K.L. told him her mother was at work.[3] Defendant and his friend stayed at the trailer for 30 minutes or an hour playing cards and listening to music. The men brought beer with them. They drank beer while they were there.[4] About 10:00 or 10:30 p.m., the girls told the men they wanted to go to bed. The men left.

Later that evening K.L. awoke. She heard someone knocking on the door. She testified:

I heard somebody knocking on the door. I got up, looked out the window, and I had seen [defendant]. I didn't know what to do, because I was wondering why he was at my house. I went in there, back in my room, sat down on my bed. I laid back down. The girls weren't awake then yet.

K.L. heard somebody at her window. She got up and looked out the window again but saw no one. She testified, "So then a couple of minutes later I got—or I heard somebody knocking at the door again, except they were knocking louder, and they kept on knocking and knocking."

K.L. was asked the following questions and gave the following answers:

Q. [by the prosecuting attorney] What did you do at that point?

A. I got up, went to the door, and I seen [defendant] there again.

Q. Now, what happened after that?

A. I looked out the door.

Q. Did you open that door? Was he knocking on the door or what?

A. He was—he knocked still on the porch, and just kept on knocking and knocking. I opened the door, yes.

Q. How wide did you open that door? Did you open it clear up for him or what happened?

A. I opened it about as long as a ruler.

Q. Are you indicating about ten inches with your fingers?

A. Yes, sir.

Defendant forced his way into the trailer. K.L. explained:

Q. [by the prosecuting attorney] How did he force his way in?

. . .

A. He put his hand on the door. We had a little struggle. He—

Q. How does your door open? Does it open inwards or open outwards?

A. It opens outwards.

Q. So how did he open the door?

A. He opened it. He forced the door open outwards.

Q. Are you saying he jerked it outwards?

---

**3.** K.L.'s and A.L.'s parents were separated. K.L. did not know where her father was.

**4.** K.L. testified that she "took a sip" of beer. None of the other girls drank the beer.

A. He jerked it, yes.

Q. What were you doing at that time?

A. I was trying to hold the door closed, but he was stronger than I was.

Q. Were you making any noise?

A. I screamed.

The two older girls were awakened by K.L.'s scream. Defendant put his hand over K.L.'s mouth and dragged her by her hair into the bedroom where she and the other two older girls had been sleeping. A.L. was asleep on a couch in another room. Defendant had the three girls get on the bed with their backs against the wall. Defendant repeatedly asked who was going to be first. He told K.L. to "go first." She said, "No," and started crying. Defendant told the three girls he would hurt them if they did not do what he said. He forced K.L. to take off her clothes. He put his hand in K.L.'s vagina, then he grabbed the girls by their hair and pulled them into the living room of the trailer where A.L. was asleep. Defendant told K.L. to wake A.L. When A.L. awoke, defendant forced her to take off her clothes. Defendant got on top of A.L. "and started having sex with her." She was crying and screaming.

After he had intercourse with A.L., defendant tried unsuccessfully to have intercourse with K.L. He then forced K.L. to place her mouth over his penis "a bunch of times." He forced K.K. and C.T. to put their mouths over his penis. Defendant raped A.L. a second time. On a third attempt, defendant fell asleep on top of A.L.

C.T. ran to K.L.'s and A.L.'s aunt's trailer located nearby to get help. The aunt and a friend came to the girls' trailer and took them to the sheriff's office and to a hospital. The girls had various injuries. A.L. had a laceration at the opening of her vagina that extended inward. K.L. was bruised on her left back and on the side areas of her lower chest. She had slight irritation and signs of hyperemia behind her left ear and a slight abrasion on her vagina. C.T.'s breasts were bruised and her vagina slightly irritated. K.K. had irritation outside her vagina.

Defendant was discovered asleep a quarter to a half mile from the trailer. He had blood on him and was wearing girls' size 4 jeans. His jeans, wallet, pager, boots and glasses were found inside the trailer.

Point I is directed to the trial court ruling regarding evidence defendant sought to introduce concerning purported allegations by C.T. about past incidents of sexual abuse. Defendant filed a document in the trial court entitled "Motion to Admit Evidence of Other Allegations of Sexual Crimes or for Certain Alternative Relief." It sought "an order of the Court allowing Defendant to present evidence that one or more of the alleged victims in this case has accused others of committing sexual crimes of one sort or another against her." [5] After conducting an evidentiary hearing, the trial court denied the motion. At trial, during cross-examination of C.T., defendant's trial attorney approached the bench and stated to the trial judge, "This is just for purposes of preservation. It will be at this time that I would want to cross [C.T.] on the prior allegations that I had alleged in my motion. The purpose of this is simply to preserve that and let the Court—[.]" The trial judge acknowledged he had previously denied the request to

---

5. The motion sought, alternatively, in the event the trial court found § 491.015 precluded introduction of the evidence defendant sought to introduce, a determination that the statute was unconstitutional and, in the event the trial court deemed the statute applicable, that a hearing be held as provided by that statute.

inquire as to that subject. Point I argues the trial court's refusal to admit the evidence was error; that the "evidence was relevant and admissible to challenge [C.T.'s] veracity"; that the jury should have been permitted to hear it.

Defendant argues that § 491.015, Missouri's rape shield statute, is not applicable to this situation because he was not attempting to show that C.T. had engaged in prior sexual activity, but that C.T. had made allegations of sexual assaults that had not occurred. Defendant asserts this was a permissible challenge to C.T.'s veracity. He relies on *State v. Montgomery*, 901 S.W.2d 255 (Mo.App.1995).

■ *Montgomery* is an appeal of a judgment of conviction for two counts of sodomy. The trial court granted a motion in limine that precluded the defendant from adducing testimony regarding the alleged victim's prior accusations of sexual abuse. Before cross-examining the alleged victim in *Montgomery*, the defendant made an offer of proof. The offer of proof was that defendant would show that on four separate occasions in 1984, 1988, 1989 and 1991, the alleged victim complained of different men taking or attempting to take sexual liberties with her against her will. *Montgomery* held that the trial court erred in not allowing the evidence, other than the 1984 allegation because of remoteness; that it was admissible to challenge the alleged victim's credibility. *Montgomery* explains:

> "It is well-established that an important purpose of the constitutionally protected right of cross-examination is to provide litigants with a meaningful opportunity to challenge the veracity of testimony through the process of impeachment." *State v. Johnson*, 700 S.W.2d 815, 817 (Mo. banc 1985), *cert. denied* 476 U.S. 1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986). Under Missouri

law, the interest or bias of a witness and any relation to or feeling toward a party are never irrelevant matters. *Id.* Any danger the trial will become bogged down in collateral issues and the jury distracted and confused does not outweigh a criminal defendant's interest in showing the accusing witness' bias. *State v. Lampley*, 859 S.W.2d 909, 911 (Mo.App. E.D.1993).

901 S.W.2d at 256.

In the case now before this court, the trial court based its order denying defendant's motion on evidence adduced at a pre-trial hearing on the motion. The evidence was directed to experiences of C.T., the alleged victim of the forcible sodomy offense charged in Count V of the amended information. The order that denied the motion recites "Finding of Fact." The findings state that the record does not support "that [C.T.] was sexually assaulted . . . as alleged in Defendant's motion," and that a review of juvenile records disclosed "no information indicating any sexual assault." The order then recites "Conclusions of Law." The conclusions set forth "[t]he relative portion" of § 491.015 and conclude the statute is constitutional.

■ To the extent § 491.015 was the basis for the trial court denying defendant's motion, the determination was erroneous. *State v. Montgomery, supra,* at 256, holds § 491.015 does not preclude introduction of evidence of prior allegations by an alleged victim of sexual abuse if that evidence is offered to impeach the credibility of the victim as a witness. Evidence of a victim's prior complaints, as opposed to prior sexual conduct, does not fall within the ambit of § 491.015. *State v. Lampley*, 859 S.W.2d 909, 911 (Mo.App.1993).

■ Regardless, however, of the inapplicability of § 491.015 to the evidence defendant sought to introduce, Point I is

without merit. "In matters involving the admission of evidence, we review for prejudice, not mere error and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. McClendon*, 895 S.W.2d 249, 252 (Mo. App.1995).

■ Here, unlike in most sexual misconduct cases, there were more witnesses to defendant's acts than a single victim. All four girls witnessed the sexual acts committed and testified accordingly. The testimony of each girl was consistent with the testimony of the others. The injuries the girls sustained were consistent with their testimony. The evidence of guilt of each offense for which defendant was convicted was strong. Even if the evidence not admitted were erroneously excluded, defendant was not prejudiced by its exclusion. *State v. Richardson*, 923 S.W.2d 301, 312–13 (Mo. banc), *cert. denied*, 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996). Point I is denied.

Point II is directed to a request for mistrial after the prosecuting attorney elicited testimony from victim K.K. "that she had never had 'sex' before the night of the charged offenses." The trial court denied the request for mistrial. Point II asserts this was error.

Defendant filed a motion in limine prior to the start of trial requesting the court to prohibit evidence of "the purported 'virginity' or alleged sexual purity or innocence, or any prior sexual experience(s) of any kind of any of the alleged victims . . . prior to July, 1997." The motion was granted.

In the state's redirect examination of K.K., she was asked if she "ever had sex before this night happened." K.K. answered, "No." Defendant objected that the question violated the trial court ruling on the motion in limine. The trial judge noted the answer had already been stated. Following a discussion between the attorneys and the trial judge and a request by defendant's attorney to allow him "to get into the prior sex acts," the trial court overruled the objection and refused defendant's request to inquire about "prior sex acts." The judge instructed the jury to "disregard the last question and last answer, and not consider it." Defendant moved for mistrial. The motion was denied.

■ Testimony at trial that is contrary to a party's pre-trial motion in limine does not, in itself, require declaration of a mistrial. *State v. Webber*, 982 S.W.2d 317, 322 (Mo.App.1998). A mistrial will be granted only in extraordinary circumstances. *State v. Markham*, 63 S.W.3d 701, 706 (Mo.App.2002). The grant of a mistrial is left primarily to the trial court's discretion. *Id.* The trial court is in the best position to determine the prejudicial effect of the testimony. *Id.*

■ The testimony about which defendant complains must be considered in the context in which it was given. K.K. was the last of the four victims to testify. There had been no questions about prior sexual experience, or lack thereof, asked of the first three victims. During cross-examination, K.K. had been asked whether defendant ejaculated during the times she had oral sex with him. She answered that defendant ejaculated "[a]t least one time." Defendant's attorney asked if defendant ejaculated twice. K.K. answered that she thought so but that she was "not definite." Defendant's attorney then questioned K.K. about deposition testimony in which she was asked if she remembered whether defendant ejaculated each time or just one time. She had answered, "At least two times."

It was in response to this inquiry that K.K. was asked on redirect examination about her prior sexual experience. The

first question the prosecuting attorney asked K.K. on redirect examination was, "[Y]ou said you thought that the defendant ejaculated a couple of times?" She answered, "Yes." K.K. was then asked the question that prompted the request for mistrial, "Had you ever had sex before this night happened?" to which she answered, "No."

In the discussion that followed defendant's objection, the prosecuting attorney explained that what he was "trying to get into" was that K.K. "didn't even know what she was talking about." This court finds no abuse of discretion by the trial court in denying defendant's request for mistrial. Point II is denied.

Point III asserts that the trial court "plainly erred" in not declaring a mistrial *sua sponte* during the state's closing argument when the prosecuting attorney argued there were many McDonald County girls home alone every night; that defendant's incarceration would protect girls who were home alone; and by not letting defendant walk away the jury would be performing "an act of self-defense" that would be "an act of caring about our fellow citizens." Defendant argues this was improper personalization.

By asserting "plain error," defendant tacitly acknowledges the issue about which he complains was not preserved for appellate review. No objection was made during the prosecuting attorney's closing argument with respect to the matters about which defendant now complains. Neither were those issues included in his motion for new trial. They were, therefore, not preserved for appellate review. *State v. Blankenship*, 830 S.W.2d 1, 10 (Mo. banc 1992); *State v. Kirk*, 918 S.W.2d 307, 309 (Mo.App.1996). *See* Rule 29.11(d).

In *State v. Silvey*, 894 S.W.2d 662 (Mo. banc 1995), the court declined a request for plain error review of a pros-

ecutor's statements in closing argument stating, "Relief should rarely be granted on assertions of plain error as to closing argument because, 'in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.'" *Id.* at 670 quoting *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo. banc 1988). *See also State v. Wright*, 934 S.W.2d 575, 584–85 (Mo. App.1996).

*State v. Nunley*, 992 S.W.2d 892, 895 (Mo. App.1999).

For the reasons explained in *Silvey, Wright* and *Nunley*, this court declines to grant defendant's request for plain error review. Point III is denied. The judgment of conviction is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.