**STATE of Missouri, Respondent,**

v.

**Patrick COMTE, Appellant.**

No. 25731.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 20, 2004.

Nancy A. McKerrow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Patrick Comte ("Appellant") appeals his convictions for five counts of statutory sodomy in the first degree as proscribed by section 566.062.[1] Following a jury trial, the trial court sentenced Appellant to five consecutive thirty-year sentences in the Missouri Department of Corrections. In his sole point on appeal, Appellant argues that the trial court abused its discretion in excluding evidence which, he contends, was relevant and material to his defense. We affirm.

"The trial court enjoys broad discretion in determining the relevancy of evidence." *State v. Ray*, 945 S.W.2d 462, 467 (Mo.App.1997). "The relevancy of evidence depends upon whether the evidence tends to confirm or refute a fact in issue or to corroborate evidence that is relevant and pertains to the primary issue in the case." *Id.* "It is not error to refuse irrelevant or immaterial evidence." *Id.* at 470. "Evidence is irrelevant or immaterial if it tends to draw the jury's attention away from the issues it must decide." *Id.* "While we generally will not interfere with the court's ruling on the admission or exclusion of evidence, we will do so when there exists a clear showing of abuse of that discretion." *Id.* at 467.

Appellant does not challenge the sufficiency of the evidence to support the judgment. This Court accepts as true all evidence supporting the verdict, including all favorable inferences therefrom and, as a general rule, disregards all contrary evidence and inferences. *State v. Dunn*, 21 S.W.3d 77, 79 (Mo.App.2000).

The record reveals that Appellant and T.H. ("T.H.") were married in 1991 and two children were born of the marriage, "D.C." and "B.C." Appellant and T.H. were divorced in 1996. T.H. was accorded "primary custody" of the children and Appellant was granted alternating weekend visitation and a period of temporary custody during the entire month of June. The children also lived with Appellant for a period of time beginning in March of 1998 and ending in June of that year.

In late 1998, Appellant petitioned the court for sole legal and physical custody of both children.

On February 2, 1999, at the age of seven, B.C. informed Roy Holler, the man with whom her mother was living, that Appellant "made me suck his dick." She repeated these same accusations to her mother later in the day and stated that Appellant had been sexually abusing her since 1998. B.C. again repeated these same accusations to the police. B.C. also spoke with Carl Moore of the Division of Family Services ("DFS") and informed him that Appellant had made her touch his penis with her hand and that he put his hand on her vagina, both over and under clothing.

At trial, B.C. testified that on one occasion Appellant, who was naked, tied her hands and legs to her bed and "started to touch [her] with his fingers in ways that [she] did not like." She went on to state that he touched her private parts and inserted his finger into her vagina. On another occasion, Appellant licked and kissed her vagina. B.C. testified that one time Appellant, after placing a "clear" "one-fingered glove" on his penis, tried to insert it into her vagina. She testified Appellant attempted to but failed to penetrate her vagina with his penis; she related that it "hurt" and made her bleed. Additionally, B.C. testified that Appellant forced her to "shake" his "bottle" until "angel's milk" came out and that he would then make her drink it. Further, there was evidence that

---

1. All statutory references are to RSMo 2000 unless otherwise specified.

Appellant masturbated in front of B.C.; that he forced her to perform fellatio on him; that he touched and "tap[ped]" her vagina both over her clothing and beneath her clothing "a lot"; and, that he stuck his finger in her rectum "about three times."

Prior to Appellant's arrest, he was interviewed by Detective Roy Day at the Rolla Police Department. After first denying sexual abuse of B.C., Appellant wrote a letter of apology in which he admitted that he placed his penis into B.C.'s mouth fifteen to twenty times; that she masturbated him ten times; that he "rubbed her bare vagina about 10 times and another 5 on the outside of her underwear;" and that he put his finger in her anus. Appellant denied "put[ting] [his] mouth directly on her vagina" and stated that he "never put [his] penis up her vagina or her butt." Appellant also wrote that "[t]hese things have only been going on for about 1½ yr. [sic]." Appellant also recited that "[w]hen these things happened it was a moment of weakness for me and when [B.C.] would sit on my lap she would be squirming around being an aggressor (sexually)."

Thereafter, Appellant was charged with five counts of statutory sodomy in the first degree, and, as previously related, the jury found him guilty of each charged offense. He was sentenced to five consecutive thirty year sentences in the Missouri Department of Corrections.

Prior to trial, the State renewed its previously filed motions in limine, based on irrelevancy, seeking to prevent Appellant from cross-examining T.H. about her purported alcoholism; her cohabitation in 1998 with a man named Patrick Hale, and that this same man had been purportedly charged with endangering the welfare of her children; B.C.'s previous SAFE examinations; the family's prior dealings with the DFS; and Appellant's statement to a DFS investigator that another man had physically abused B.C. in another incident.[2] Appellant's counsel argued that all of these issues were relevant to T.H.'s state of mind and illustrated that at the time B.C. made the allegations against Appellant, T.H. was fearful of losing her children to Appellant in a custody battle.

The trial court sustained the State's request to disallow all mention of the family's previous DFS involvement, and held its ruling in abeyance on the issue of T.H.'s alcohol abuse. The trial court also withheld ruling on the other issues until they were presented at trial.

Later, during trial proceedings, the trial court sustained the State's objections, on the basis of irrelevancy, when Appellant sought to cross examine T.H. on those previously outlined topics.

■ In his sole point on appeal, Appellant maintains the trial court abused its discretion in sustaining the State's objections based on irrelevancy and relating to those questions he sought to pose to T.H., contending they violated his state and federal constitutional rights. Appellant also asserts the evidence he sought to elicit was relevant and material to his defense to show that T.H. had coached B.C. into making allegations of sexual abuse against him when it appeared that T.H. might lose custody.

The State counters that the trial court committed no error in sustaining the State's objections because the evidence Appellant sought to elicit was inadmissible as being irrelevant; did not tend to establish a motive to fabricate; and did not

**2.** The record reveals that some of the motions in limine were the subject of a previous hearing conducted by a different trial court judge; however, the record is unclear as to his rulings on the State's motions.

show B.C.'s sexual knowledge. In either event, the State maintains there was no manifest injustice suffered by Appellant as he was able to establish a motive for T.H. to fabricate.

 Initially, we note that Appellant failed to make any offers of proof about the proposed evidence he sought to introduce. An offer of proof is required to preserve a matter for appellate review.[3] *State v. Dodd,* 10 S.W.3d 546, 556 (Mo. App.1999). "When an objection to proffered evidence is sustained, the party offering the evidence must demonstrate its relevancy and materiality by way of an offer of proof in order to preserve the matter for appellate review." *State v. Cardona–Rivera,* 975 S.W.2d 200, 204 (Mo. App.1998). Offers of proof "insure that the trial court and opposing counsel understand what evidence is being offered and its relevance to the case." *State v. Townsend,* 737 S.W.2d 191, 192 (Mo. banc 1987). "An offer of proof is required to allow the trial court to consider the testimony in context and to make an informed ruling as to its admissibility." *Dodd,* 10 S.W.3d at 556. The offer must be definite, specific, and demonstrate why the evidence is relevant and admissible. *Liszewski,* 941 S.W.2d at 751. " 'Mere statements and conclusions of counsel are not sufficient.' " *State v. Hurtt,* 836 S.W.2d 56, 59 (Mo.App. 1992) (quoting *Kinzel v. West Park Inv. Corp.,* 330 S.W.2d 792, 796 (Mo.1959)).

 The preferred method of making an offer of proof is to question the witness on the stand out of the jury's hearing. *State v. Hunter,* 957 S.W.2d 467, 470 (Mo.App.1997). An offer may be in narrative form so long as the offer is definite, is specific, is not mere conclusions of counsel, and sets out sufficient facts to demonstrate the admissibility of the evidence. *State v. Hirt,* 16 S.W.3d 628, 633 (Mo.App.2000). "When a party fails to provide the offer in question and answer form, the risk is present that a reviewing court will find the offer insufficient." *Hurtt,* 836 S.W.2d at 59.

> It has long been the rule in this state that the proper procedure to present and preserve such an offer is to have the witnesses present; put them on the stand; propound the questions; and thus enable the trial court to intelligently rule upon, and an appellate court to review, the propriety and admissibility of the evidence sought to be elicited.

*Hurtt,* 836 S.W.2d at 59 (quoting *State v. Sullivan,* 553 S.W.2d 510, 513 (Mo.App. 1977) (internal citations omitted)).

It was Appellant's responsibility to establish the admissibility of the rejected evidence and the trial court's error in its exclusion. *See State v. Myers,* 997 S.W.2d 26, 32 (Mo.App.1999). To the extent the rulings of which Appellant now complains were not followed by an offer of proof, we are presented nothing for review.

 Because Appellant's claims are not preserved for appeal our review is available, if at all, for plain error. Rule 30.20, Missouri Court Rules (2003). Plain error review is used sparingly and is limited to those cases where there is a clear demonstration of manifest injustice or miscarriage of justice. *State v. Ballard,* 6 S.W.3d 210, 214 (Mo.App.1999). Plain error and prejudicial error are not synony-

---

**3.** An offer of proof is not necessary in all circumstances. *Russell v. Director of Revenue,* 35 S.W.3d 507, 510 (Mo.App.2001). An offer of proof is not necessary when " 'there is a complete understanding, based on the record, of the excluded testimony; the objection is to a category of evidence, rather than to specific testimony; and the record reveals the excluded evidence would have helped the proponent.' " *Id.* (quoting *Liszewski v. Union Elec. Co.,* 941 S.W.2d 748, 751 (Mo.App. 1997)).

mous terms. Asserting plain error places a much greater burden on a defendant than asserting prejudicial error. *State v. Reed*, 21 S.W.3d 44, 47 (Mo.App.2000).

> To show plain error, an appellant must demonstrate that the trial court's error so substantially violated his rights that manifest injustice or miscarriage of justice would result if the error were left uncorrected. If the error did not have a decisive effect on the jury's verdict, there has been no plain error. Before conducting plain error review, a reviewing court must first determine whether the trial court's action would amount to manifest injustice, assuming the court's action was erroneous. If not, then plain error review is inappropriate.

*State v. Mead*, 105 S.W.3d 552, 556 (Mo. App.2003) (internal citations omitted). When guilt is established by overwhelming evidence, no injustice or miscarriage of justice results requiring relief under the rule. *State v. Jordan*, 627 S.W.2d 290, 293 (Mo. banc 1982).

■ We note that Appellant *was* able to demonstrate that T.H. had a motive to fabricate the allegations made by B.C. Appellant was able to cross-examine T.H. relating to the fact that Appellant had temporary custody of the children during 1998, and he had moved for full custody of the children. In Appellant's letter of apology, which was admitted into evidence, he set out he was going to "go to court for custody of my two children. . . ." On cross-examination T.H. admitted she did not want Appellant to have custody and wanted to keep custody of her children, and that shortly thereafter she obtained temporary custody of the children. When asked if the full custody hearing had been scheduled for February 1999, she answered, "It

might have been. I don't remember for sure."[4]

Additionally, the record is devoid of a showing that T.H. had coached B.C. She denied that T.H. had told her what to say at trial about her allegations against Appellant.

Finally, in his confession to police, Appellant admitted to the repeated sexual abuse of B.C. Under these circumstances, Appellant has failed to demonstrate that the proposed evidence he sought to elicit would have had any decisive effect on the verdict of the jury and that he suffered either manifest injustice or a miscarriage of justice from the trial court's ruling. *See Mead*, 105 S.W.3d at 556. Accordingly, we deny plain error review. Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and BATES, C.J., concur.

---

**4.** It was on February 2, 1999, that B.C. had made her first allegations of sexual abuse by